UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KAREN BERRY,

               Plaintiff,                                     Hon. Janet T. Neff

v.                                                  Case No. 1:10-CV-614

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
_____/


## <u>REPORT AND RECOMMENDATION</u>

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g)

limits the Court to a review of the administrative record, and provides that if the Commissioner's

decision is supported by substantial evidence, it shall be conclusive.  Pursuant to 28 U.S.C. §

636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and

recommendations for disposition of social security appeals, the undersigned recommends that the

Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

2

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 42 years of age on the date her insured status expired. (Tr. 27).  Plaintiff successfully completed high school and worked previously as an office clerk, receptionist, cashier, and customer service representative.  (Tr. 27, 89-93).

Plaintiff applied for benefits on March 9, 2005,[1] alleging that she had been disabled since November 25, 2004, due to memory problems, fibromyalgia, chronic fatigue syndrome, asthma, depression, obesity, arthritis, and nerve damage in her neck. (Tr. 18, 72-74, 113).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 29-71).  On March 17, 2008, Plaintiff appeared before ALJ Patricia Hartman, with testimony being offered by Plaintiff and vocational expert, Heather Benton.  (Tr. 454-81).  In a written decision dated April 18, 2008, the ALJ determined that Plaintiff was not disabled.  (Tr. 18-28).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 3-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2006.  (Tr. 20); *see also*, 42 U.S.C. § 423(c)(1).  Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social

---

[1] Plaintiff previously applied for benefits in 2002.  (Tr. 18).  Plaintiff's applications were denied initially and after a hearing before an Administrative Law Judge.  (Tr. 18).  The Appeals Council affirmed the denial of Plaintiff's applications.  (Tr. 18).  There is no indication that Plaintiff pursued the matter further.

Case 1:10-cv-00614-JTN-ESC  Doc #17  Filed 09/06/11  Page 4 of 17  Page ID#82


Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status.  *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## RELEVANT MEDICAL HISTORY

On October 16, 2001, Plaintiff underwent discectomy and fusion surgery to repair a herniated disc at C5-C6.  (Tr. 171-72).  X-rays of Plaintiff's cervical spine taken December 7, 2001, were unremarkable.  (Tr. 166).  X-rays of Plaintiff's cervical spine taken February 6, 2002 revealed "normal anatomic alignment of the cervical spine."  (Tr. 165).  X-rays of Plaintiff's cervical spine taken May 24, 2002, revealed "normal alignment."  (Tr. 164).  X-rays of Plaintiff's cervical spine taken August 16, 2002, revealed "satisfactory alignment."  (Tr. 163).

On October 8, 2002, Plaintiff participated in an EMG and nerve conduction study examination the results of which were "normal" with "no electrophysiologic evidence of a neuropathy, plexopathy or radiculopathy."  (Tr. 169-70).

On June 16, 2003, Plaintiff underwent discectomy and fusion surgery to replace a herniated disc at C6-C7.  (Tr. 173-74).  X-rays of Plaintiff's cervical spine taken August 1, 2003, revealed that "alignment is within normal limits."  (Tr. 162).  X-rays of Plaintiff's cervical spine taken September 12, 2003, revealed "no evidence for loosening or infection."  (Tr. 161).  The "vertebral body height and alignment" and "prevertebral soft tissues" were "within normal limits."  (Tr. 161).

On November 4, 2003, Plaintiff participated in a pulmonary function test.  (Tr. 275).  This examination revealed that Plaintiff was experiencing "normal spirometry, resting lung volumes, and gas transfer rate."  (Tr. 275).  It was further observed that after Plaintiff used an inhaler, she

experienced "significant improvement in expiratory flow rates." (Tr. 275).  The doctor concluded that "these findings are consistent with asthma." (Tr. 275).

X-rays of Plaintiff's right and left knees taken April 27, 2004, were "negative." (Tr. 267).  X-rays of Plaintiff's chest taken June 29, 2004, revealed "no active pulmonary disease process." (Tr. 258-59).

On April 7, 2005, Plaintiff was examined by Dr. Linda Bedell. (Tr. 148).  Plaintiff reported that she was seeking Social Security Disability. (Tr. 148).  Plaintiff reported that "she had a motor vehicle accident in January of 2000 which is when most of her problems started." (Tr. 148). Plaintiff reported suffering from fibromyalgia which causes "aching all over her body." (Tr. 148). Plaintiff also reported that "after about one half hour of standing she becomes lightheaded and feels generalized weakness." (Tr. 148).  Plaintiff reported that "when she reaches up over her head to do anything her arms become tingly and she often drops things." (Tr. 148).  Plaintiff reported that this tingling "involved all five fingers of both hands." (Tr. 148).  Plaintiff reported that "when she bends over she has vertigo fairly consistently and that makes it hard for her to function." (Tr. 148). Plaintiff also reported that "she cannot hold a carton of milk at all due to weakness and tingling in her hands." (Tr. 148).  Plaintiff also reported that her fibromyalgia affects her memory. (Tr. 148). The doctor reported that Plaintiff was "well appearing" and "in no acute distress." (Tr. 148).  A fibromyalgia trigger point exam "revealed multiple positive trigger points." (Tr. 148).  Plaintiff was prescribed Paxil to treat her depression and Zanaflex and Klonopin to treat her fibromyalgia. (Tr. 147, 149).

On May 19, 2005, Plaintiff reported to Dr. Bedell that her fibromyalgia medication was "really helping her pain." (Tr. 147).  Plaintiff also reported that she exercises with her mother

and that "they are up to about two miles at a time as many days of the week as they can do it."  (Tr. 147).  With respect to Plaintiff's depression, the doctor reported that it was "somewhat more severe." (Tr. 147).  Accordingly, Plaintiff's Paxil dosage was increased.  (Tr. 147).

On June 11, 2005, Plaintiff participated in a consultive examination conducted by Dr. Nathaniel Bishop.  (Tr. 183-87).  Plaintiff reported that she was disabled due to "memory problems, asthma, arthritis, nerve damage to the neck, fibromyalgia, chronic fatigue syndrome and obesity." (Tr. 183).  With respect to her asthma, Plaintiff reported that she experiences shortness of breath when walking "less than 50 feet."  (Tr. 183).  With respect to her cervical spine, Plaintiff reported that she has arthritis as well as "nerve damage."  (Tr. 183).  Plaintiff also reported however that "she takes no medications for the pain."  (Tr. 183).  Plaintiff reported that she can sit for one hour, stand for 15-20 minutes, but "can lift less than five pounds on a regular basis."  (Tr. 183).  Plaintiff walked with a "normal" gait and an examination of her neck, chest, and heart was unremarkable.  (Tr. 184). A musculoskeletal examination revealed "no obvious bony deformities" and Plaintiff's peripheral pulses were "easily palpated and symmetrical."  (Tr. 185).  The doctor observed no evidence of edema and Plaintiff exhibited "full" range of motion in her cervical spine, dorsolumbar spine, shoulders, elbows, knees, ankles, wrists, and hands and fingers.  (Tr. 185-87).  With respect to Plaintiff's reported fibromyalgia, the doctor reported "tenderness to palpation diffusely, most notably over the right shoulder."  (Tr. 185).  Straight leg raising was negative and Plaintiff exhibited 5/5 motor strength.  (Tr. 187).

On June 22, 2005, Dr. Zahra Yousuf completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations.  (Tr. 189-203).  Determining that Plaintiff suffered from depressive disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04

6

(Affective Disorders) of the Listing of Impairments. (Tr. 190-98 ). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 199). Specifically, the doctor concluded that Plaintiff experienced no restrictions in the activities of daily living, no difficulties in maintaining social functioning, no difficulties in maintaining concentration, persistence or pace, and never experienced episodes of deterioration or decompensation in work or work-like settings. (Tr. 199).

Following a July 14, 2005 examination, Dr. Bedell reported that Plaintiff's depression was "still not improved at all." (Tr. 142). The doctor discontinued Plaintiff's Paxil prescription and instead prescribed Zoloft. (Tr. 142). On August 11, 2005, Plaintiff was examined by Dr. Bedell. (Tr. 139). With respect to her depression, Plaintiff reported that "she feels better now." (Tr. 139). Plaintiff also reported that "she continues to walk with her mother on a daily basis" and that "they are up to about two and a half miles at a time now." (Tr. 139).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that as of the date her insured status expired, Plaintiff suffered from: (1) degenerative disc disease of the cervical spine, (2) obesity, status post-gastric bypass surgery, and (3) depression/anxiety, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-23). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 23-28). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date her insured status expired, Plaintiff retained the capacity to perform light work[3] subject to the following limitations: (1) she can only occasionally reach overhead with both upper extremities, (2) she can frequently engage in fingering/handling activities with both hands, (3) she should never use ladders, scaffolds, or ropes, (4) she can only occasionally crouch, kneel, crawl, bend, balance, or use ramps and stairs, (5) she should avoid concentrated exposure to fumes, dust, odors, gases, scents, chemicals, or extreme heat or cold, (6) she is limited to simple unskilled work that does not involve maintaining intense concentration, although she is able to remain on task, and (7) she is restricted to work that does not involve computations, calculations, problem-solving, reasoning, or detailed precision work.  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden.

---

[3]  Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567.  Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday."  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

*O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Heather Benton.

The vocational expert testified that there existed at least 6,000 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 478-80). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert further testified that if Plaintiff were further limited to sedentary work, there existed at least 3,300 jobs which she could perform. (Tr. 480).

a.       The ALJ Did Not Fail to Properly Develop the Record

On January 18, 2005, Jacqueline Kuchta, a non-attorney employed by Disability Advocates of America, was appointed to represent Plaintiff following the initial denial of her disability claim. (Tr. 56-57). On November 15, 2007, four months *before*[4] the administrative hearing, the ALJ wrote Ms. Kuchta requesting certain specific medical records as well as "any other medical records dated after 7/15/05." (Tr. 79).

---

[4] Plaintiff erroneously asserts that this letter was authored after the administrative hearing.

10

At the outset of the administrative hearing, the ALJ noted that the administrative record did not contain "any medical records since 2005." (Tr. 458). The ALJ then asked Kuchta if she had "anything more recent." (Tr. 458). Kuchta replied, "[n]o, I don't. . .[b]ecause lately the records are just follow-up records." (Tr. 458). The ALJ observed that "the problem right now is that I have nothing to show her physical condition since 2005." (Tr. 459). Kuchta then agreed to submit the medical records in question. (Tr. 459). As the ALJ later observed, however, Kuchta "never submitted the requested medical records." (Tr. 18). Plaintiff asserts that she is entitled to relief because the ALJ failed to properly develop the record.

Plaintiff bears "the ultimate burden of producing sufficient evidence to show the existence of a disability." *Allison v. Apfel*, 2000 WL 1276950 at *5 (6th Cir., Aug. 30, 2000) (citations omitted). As the relevant Social Security regulations make clear, it is the claimant's responsibility to provide the evidence necessary to evaluate her claim for benefits. *See* 20 C.F.R. §§ 404.1512 and 404.1514. As the Supreme Court has observed, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Yuckert*, 482 U.S. at 2294 n.5.

Only under "special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, *and* is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Commissioner of Social Security*, 58 Fed. Appx. 113, 115 (6th Cir., Jan. 31, 2003) (emphasis added) (citations omitted); *Nabours v. Commissioner of Social Security*, 50 Fed. Appx. 272, 275 (6th Cir., Nov. 4, 2002) (citations omitted). Plaintiff was represented at the administrative hearing and there is no evidence that Kuchta was incapable of advocating Plaintiff's position or was unfamiliar with the relevant hearing

11

procedures.  Thus, the Court finds that the ALJ was not under a heightened duty to develop the record in this matter.

The ALJ is not required to supplement the record with additional evidence unless the record as it then exists is insufficient to assess Plaintiff's residual functional capacity or otherwise resolve her claims.  *See, e.g., Lamb v. Barnhart*, 85 Fed. Appx. 52, 57 (10th Cir., Dec. 11, 2003); *Haney v. Astrue*, 2010 WL 3859778 at *3 (E.D. Okla., Sept. 15, 2010); *Brown v. Commissioner of Social Security*, 709 F.Supp.2d 248, 257 (S.D.N.Y. 2010); *Allison*, 2000 WL 1276950 at *5.

In the Court's estimation, the record before the ALJ was adequate to resolve Plaintiff's claim.  The ALJ can hardly be faulted for Plaintiff's failure to comply with a request to submit medical records.  This was not a circumstance in which the ALJ allegedly failed to secure certain examinations or tests which were necessary to resolution of Plaintiff's claims.  Instead, this is simply a circumstance in which Plaintiff failed to submit medical records already in existence. In sum, the Court discerns no error in the ALJ's actions.

       b.     Plaintiff is not Entitled to Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ.  (Tr. 367-453).  The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination.  (Tr. 3-6).  This Court, however, is precluded from considering such material.  In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such

evidence when adjudicating the claimant's appeal of the ALJ's determination.  *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered.  *Cline*, 96 F.3d at 148.  To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence.  *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of treatment notes from Dr. Bedell and Dr. Stephen Bachmeyer.  On June 17, 2008, Dr. Bachmeyer completed a report concerning Plaintiff's ability to perform work activities.  (Tr. 367-70).  The doctor reported that Plaintiff, without interruption, can sit for 30 minutes, stand for 15 minutes, and walk for 10 minutes.  (Tr. 367).  The doctor reported that during an 8-hour workday, Plaintiff can sit for two hours, stand for one hour, and walk for one hour.  (Tr. 367).  The doctor reported that Plaintiff can lift/carry five pounds, but can never lift/carry ten pounds.  (Tr. 367).  Dr. Bachmeyer reported that these limitations had been in effect since January 2000.  (Tr. 367).  Dr. Bachmeyer's opinions are not supported by the medical evidence detailed above.  Moreover, the doctor's opinions are not even supported by his own treatment notes.  (Tr. 373-410).  As for the additional treatment notes from Dr. Bedell, they reveal nothing that calls into doubt the ALJ's decision in this matter.  (Tr. 411-53).

With respect to the additional evidence which pre-dates the ALJ's decision, Plaintiff has failed to establish that there exists good cause for her failure to timely submit such.  As for the small amount of additional evidence secured after the ALJ's decision (e.g., Dr. Bachmeyer's opinion

13

regarding Plaintiff's ability to perform work activities), the Court notes that such post-dates the expiration of Plaintiff's insured status by more than one and one-half years and, therefore, sheds little (if any) light on Plaintiff's condition prior to the expiration of her insured status.  It is, therefore, not reasonable to assert that consideration of this material by the ALJ would have led to a different result.  Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

    c.  The ALJ Properly Discounted Plaintiff's Subjective Allegations

    Plaintiff asserts that the ALJ improperly discounted her subjective allegations.  At the administrative hearing, Plaintiff testified that she can only sit for "about 15 minutes." (Tr. 468).  She testified that she can only stand for 15-20 minutes at which point she "get[s] really light-headed." (Tr. 468).  Plaintiff testified that she can walk "maybe two blocks." (Tr. 468).  Plaintiff also reported that "sometimes" her fingers and hands "go numb because of the nerve damage [in her] neck." (Tr. 469).  The ALJ discounted Plaintiff's subjective allegations finding that such were contradicted by the evidence of record.  (Tr. 23-27).

    As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed.

14

Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's

assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the
> alleged pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan*

standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July

29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may

support a finding of disability only where objective medical evidence confirms the severity of the

alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).

However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801

(citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d

at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t

is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the

witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such

evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand.  The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded.  *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

The ALJ concluded that Plaintiff's "testimony as to her level of physical activity is inconsistent with the evidence in the record."  (Tr. 25).  In this respect, the ALJ specifically observed that Plaintiff's testimony regarding her ability to walk is in stark contrast with the fact that she also reported walking up to two miles with her mother.  The ALJ also concluded that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual."  (Tr. 25).  Specifically, the ALJ observed that Plaintiff "never sought or received treatment from a psychiatrist to treat her depressive symptoms and received antidepressants from her primary care physician.  While [Plaintiff] testified that she received counseling, there is no evidence of any treatment from the alleged onset date through her date last insured."  (Tr. 25).  The ALJ further also observed that "[t]here is very little evidence that [Plaintiff's] neck pain has significantly affected her ability to sustain full-time competitive employment."  (Tr. 25-26).  The Court further notes that Plaintiff's allegation that her fingers and hands "sometimes" go numb due to "nerve damage" in her neck enjoys no support in the medical record.  The ALJ's rationale for discrediting Plaintiff's subjective allegations enjoys substantial support in the administrative record.  Accordingly, Plaintiff's argument is rejected.

16

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  September 6, 2011                    /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge

17